IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG, 1884.

## Appeal of Jordan and Porter, Assignees for Benefit of Creditors, etc.

107   75
133   83
107   75
163   155
107   75
164   408
107   75
177   605

1. An assignee for the benefit of creditors cannot, as a general rule, appeal from a decree distributing the funds in his hands. He is protected by the decree in paying out money in accordance therewith.

2. Where, however, two separate firms, named B. & C. and B. & D. respectively, by one deed of assignment conveyed the property belonging to said firms and to the individual members thereof to A., for the benefit of their creditors, and on the audit of A.'s account as assignee of B. & D., A., as assignee of B. &. C., claimed a portion of the fund for distribution, which claim was disallowed,
   *Held,* That A., as assignee of B. & C., had the same power as an ordinary creditor to except to said disallowance, and on the dismissal of his exception to appeal.

3. Under said assignment (subsequent to which B. died), A. filed his account as assignee of B. & D. A portion of the balance in his hands consisted of the proceeds of the sale of real estate belonging to D. This fund was claimed on the one hand by E., an individual creditor of D , under a judgment against D., existing prior to the assignment, the lien of which had expired before the confirmation of the said sale, and on the other hand by A., as assignee of B. & C. under five several judgment notes (upon which judgment had not been entered), held by B. & C., and executed and signed in the name of B. & D. by D., without the consent or authority of B., and after the assignment to A. The consideration of these notes, whether for a previously existing indebtedness of D. or not, did not appear.
   *Held,* (1) That as the rights of creditors of an assignor are fixed as of the date of the assignment, the judgment notes thus executed after

[Appeal of Jordan and Porter.]

the assignment to A., afforded no evidence of any ownership on the part of B. & C. in the fund for distribution, and the holder of said notes could not, without establishing as a consideration for said notes some claim or indebtedness against D. existing prior to the assignment, participate in the distribution; that the fund was, therefore, properly awarded to E.

(2) That as it was admitted that D. was individually liable to both of the claimants upon their respective evidences of indebtedness, his interest was *in equilibrio*, and he was therefore competent to testify as to the above facts occurring in part in the lifetime of B., notwithstanding the death of the latter.

June 2d, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Dauphin county:* Of May Term, 1884, No. 18.

This was an appeal by Francis Jordan and George W. Porter from a decree of the said court, dismissing their exceptions to the Auditors' report in the matter of the distribution of the assigned estate of Casper S. Bigler.

The facts were as follows: On September 7th, 1876, Samuel S. Bigler and John A. Bigler, bankers, doing business in the name of the City Bank, and Samuel S. Bigler and Casper S. Bigler, lumber manufacturers, trading in the firm name of Bigler & Son, made a deed of assignment, for the benefit of creditors, to Francis Jordan and George W. Porter. This deed included the property and estates of said two firms, and also of the several individuals composing them. Samuel S. Bigler was a member of the City Bank firm, and also of the saw mill firm of Bigler & Son; and John A. Bigler was the chief acting officer of the bank. On July 24th, 1882, the assignees, having accepted the said trusts, filed an account of the assigned estate of Samuel S. Bigler and Casper S. Bigler, lumber manufacturers, and doing business in the name of Bigler & Son, showing a balance of $12,435.49 for distribution. Prior to this date Samuel S. Bigler had died. To the confirmation of this account exceptions were filed August 31st, 1882, by Casper S. Bigler, alleging that the proceeds of a certain saw mill, with which the accountants had charged themselves, did not belong to said partners, as partners, but as tenants in common. Thereupon the court, September 5th, 1882, appointed Frederick M. Ott and Leroy J. Wolfe, Esqrs., Auditors to pass upon the exceptions, and report distribution. Said exceptions were sustained by the Auditors, who found the net aggregate fund for distribution to be $10,835.49. This sum they divided into three parts, one of which, amounting to $5,783.54, they divided among the creditors of Bigler & Son; another part ($2,525.97), they distributed among the creditors of Samuel S. Bigler, and the remaining part ($2,525.97), to

the creditors of Casper S. Bigler; and this latter sum is the fund now in dispute.

Before the Auditors this fund was claimed on the one hand by Lyman D. Gilbert, as assignee of a judgment held by one Hocker against Casper S. Bigler, the lien of which had expired before the confirmation of the sale of the real estate which created the fund in dispute, through a failure to revive the said judgment. The fund was claimed on the other hand by Jordan and Porter, as assignees of the City Bank, upon five judgment notes under seal amounting in the aggregate to $184,000, signed by Bigler & Son, and made payable ——— days after date to John A. Bigler or his assigns. These notes were dated January 1st, 1876, but it was found as a fact by the court that the notes were signed by Casper Bigler after the date of the assignment to Jordan and Porter (September 7th, 1876), and antedated as above: The words " City Bank" were stamped across them in blue ink, and they were included by the assignees of the City Bank in the inventory of the bank's property. It having appeared that Casper S. Bigler signed these notes in the name of Bigler & Son without the authority or consent of his partner, the assignees of the bank only sought recovery upon them out of the $2,525.97, found by the Auditors to belong to the individual estate of Casper S. Bigler.

The Auditors rejected this claim, because they considered that the whole of the fund for distribution was taken by the Hocker judgment, which they held to be a lien on the premises from which the fund was raised. To this report exceptions were filed by the assignees of the City Bank, and it was referred back to the same Auditors to find "the facts more fully," as to the distribution of the assets of Casper S. Bigler.

On the re-hearing upon this reference Casper S. Bigler was again called as a witness, and the offer was made to prove by him " that the City Bank had no claim against him on account of any individual indebtedness, either at or before the failure of said bank, and that he never gave any obligation or other evidence of indebtedness to said bank for any individual indebtedness." This offer was objected to by the assignees of the City Bank " on the ground that the witness was incompetent to defeat a recovery on the obligations under seal upon which the claims of the City Bank are made through its assignees; and that the effect of the instruments could not be destroyed by parol testimony, except upon an allegation of fraud or mistake, neither of which was alleged here." The Auditors admitted the testimony, and from it and the notes themselves found " that the notes were not given for any *original* individual indebtedness" of Casper S. Bigler; that

the Hocker judgment was no lien; and they further reported two alternative tables of distribution—the one or the other to be adopted by the court as it should find the law to be on the testimony of Casper S. Bigler. The first of said tables of distribution divided the fund pro rata between Jordan and Porter, as assignees of the City Bank, and Gilbert, and by the second table the entire fund was awarded to Gilbert in payment of the Hocker judgment.

Jordan and Porter, as assignees of the City Bank, excepted to this report on the ground that "the Auditors erred in receiving the testimony of Casper S. Bigler, and in finding as a fact that the judgment notes were not given for his individual indebtedness." This exception was overruled by the court, and a decree entered confirming the second alternative table of distribution, McPHERSON, J., filing the following opinion:—

The Auditors in their supplemental report have found as a fact that "these notes were not given for an original individual indebtedness" of Casper Bigler, and the exceptions of the assignees require us to consider whether this finding is warranted by the evidence. The assignees also assert that the Auditors erred in admitting Casper Bigler to testify concerning the execution and consideration of these notes, and this preliminary question must be first decided. We do not think the objection is sound. The Act of 1869 certainly allowed him to give testimony under the circumstances of this proceeding, and the testimony he did give was competent and relevant. It was offered and received to prove who signed the judgment notes in question, when and under what circumstances they were signed, and for what, and for whose indebtedness they were given. This testimony was important, and did not, except as to their date, in any way contradict the notes. Indeed, if we disregard it, as the assignees ask us to do, and look at the notes· alone without evidence as to who signed them, or for what debt they were given, we would be obliged to say that they had not been proven to be Casper Bigler's individual debt, and·could not share in this distribution.

Taking the notes then, and Casper Bigler's testimony together, were the auditors warranted in their finding as above stated? The testimony is contradictory, and there is nothing, except the notes themselves, which bears further upon the question, whose debt did these notes represent? In this condition of the evidence, the finding of the auditors is entitled to much weight: they have heard the witness and have decided which statement was true. Their finding, like the special verdict of a jury, must stand in the absence of plain mistake, and such mistake we do not see: Bedell's Appeal,

6 Nor. 510; Wedekind's Est., 11 Phil. 68; Jones *v.* Jones, Id. 559.

The assignees do not strenuously assert, however, that the notes they present were given for an original, separate indebtedness of Casper Bigler, but contend that they were given for a debt of the firm, and that Casper became individually liable for this debt, as it had been originally and separately his own, by signing the firm name, without authority, to notes under seal. In this aspect of the case, it makes little matter what was the original consideration of the notes: if Casper Bigler became liable in the manner and to the extent contended for, the Auditors' finding in regard to the original consideration is unimportant, for there is no doubt that he did sign these judgment notes in the firm name without authority from his partner. Did he thereby make the debt his individual and separate obligation, so as to put it in the same class and on the same level with the debt secured by Mr. Gilbert's judgment? The general question presents some difficulty, but we do not feel obliged to answer it, believing that the time when these notes were signed is the controlling factor in the problem. Their date is January 1st, 1876, but they were really signed, in September, 1876, shortly *after* the assignments above referred to. The uncontradicted testimony of Casper Bigler establishes this fact. On page six of the Auditors' notes he testifies: "These notes . . . . . signed by Bigler & Son were signed in blank after the the date of assignment for benefit of creditors. I signed them after the date of the assignment of City Bank," (which was by the same deed as the other assignments), "it may be one or two days after; they were blank notes with no writing on when I signed them. The signature to the blank notes is mine." Now, it seems to us that, assuming the position of the assignees *to* be correct in cases arising before an assignment has been made, or perhaps before insolvency has come, it cannot be correct in a case arising *after* an assignment has been made, and the debtor's property has passed out of his hands in trust for his creditors of every class, so far at least as the property assigned is concerned. It certainly is the law of Pennsylvania that the rights of creditors in this property are fixed as of the date of assignment, and that each creditor then becomes an owner of the property assigned in the proportion which his claim bears to the gross amount of claims against the estate. To such an extent does this doctrine go, that where a creditor obtains partial satisfaction by seizing after the assignment property which the debtor has subsequently acquired, the creditor's ownership is not thereby made less, and he is still entitled to share in the proceeds of the assigned estate on the basis of his

original claim: Keim's Appeal, 3 Cas. 42; Miller's Appeal, 11 Cas. 481; Brough's Estate, 21 P. F. S. 460; Smith's Appeal, 24 P. F. S. 191; Dean's Appeal, 2 Out. 101. In Dean's Appeal, an insurance company had been dissolved by order of court, and it was held that the rights of creditors were so fixed by the decree that a policy holder, who suffered loss by fire thereafter, could not base his claim upon the loss, but must be confined to the unearned premium due when the company was dissolved. That seems to us a striking illustration of the doctrine referred to, and is an application of it to cases where the assignment is not voluntary but compelled by the law. How, therefore, can we say here that Casper Bigler could, after his assignment, make new individual creditors with claims on the individual property assigned, or could reach the same result by giving to existing partnership creditors rights over his individual property which, at the date of the assignment they certainly did not have? This would be interference with the ownership of his property as determined by the deed of assignment, and we think that he at least cannot so interfere. So far as the property assigned is concerned, we must hold that Casper Bigler's act, in signing the firm name after the assignment to these judgment notes, could not affect the rights of creditors as fixed by the deed of assignment, and that we cannot, in this distribution, treat the notes as his individual debt.

It follows that, as Casper Bigler and Bigler & Son are both insolvent, the fund must go to Mr. Gilbert's judgment as the only individual debt in proof: Black's Appeal 8 Wr. 503; Houseal's Appeal, 9 Wr. 484; 2 Lead. Cas. Eq. (4 ed.) 392 *et seq.*; 2 Lind. Part. (4 ed.) 1,054, note 1.

The second alternative distribution of the auditors is confirmed, and in accordance therewith we decree to the judgment of Lyman D. Gilbert, No. 87, November Term, 1876, the sum of two thousand three hundred and eighty-six dollars, being the net balance for distribution.

Jordon and Porter, as assignees of the City Bank, thereupon took this appeal; assigning as error the dismissal of their exception and the entry of the said decree.

*Hall* (with him *Jordan*) for the appellants.—Casper S. Bigler was clearly an incompetent witness. Where, as in this case, a party to a thing or contract is dead, and his rights have passed by his own act or that of the law to another representing his interest in the controversy, the survivor to that subject cannot testify to matters occurring in the lifetime of the deceased party: Hanna *v.* Wray, 27 P. F. S. 27; Murray *v.* R. R. Co., 7 Out. 37. It may be argued that Casper Bigler was not interested in the contention of these two claim-

ants as his liability continued in any event, but to this we answer that where an assignee for the benefit of creditors is plaintiff in an action, the assignor, although he releases all right to any surplus that may remain, is nevertheless incompetent as a witness: Sharp *v.* Long, 4 Casey 433; and the reason for the rule as presented in that case is as follows, that the assignor, notwithstanding his release, is interested in increasing the fund in the hands of the assignee, which is to be applied in payment of his debts. The reasoning of that case applies with equal force to this.

Assuming, however, the competency of Casper S. Bigler we submit it was error to admit his parol evidence to vary his written contract under seal, contained in the five judgment notes; as the court based its decree upon a fact found from the evidence of Bigler alone, viz: that the judgment notes were executed after the date of the assignment for the benefit of creditors; if we have shown the incompetency of the said witness or of his evidence, we are relieved from a fruther discussion of the court's disposition of this case.

[PAXSON, J. The fund is in the hands of the appellants: they are not interested in the distribution. Should not the creditors, who are aggrieved, have excepted and appealed?]

The assignees represent the creditors and are entitled to take all steps necessary to a lawful distribution of the fund in their hands. Furthermore, our right to appeal springs from the fact that five different estates were assigned to us.

[STERRETT, J. As I understand it, the appellants are assignees of Bigler & Son and also of the City Bank. The fund was produced by the assigned estate of Bigler & Son, in which the assignees of the City Bank claim to be entitled to participate. Under the circumstances, it seems to me that the appellants, as assignees of the City Bank are properly here as exceptants and appellants.]

*John H. Weiss,* for the appellees.—The assignees have no standing to appeal in this case. They are amply protected by the decree of the court below: Fulton's Estate, 1 P. F. S. 204, 211.

Both Bigler & Son and the individuals composing the firm made assignments for the benefit of creditors; there were firm assets and individual assets in existence at the time when the assignments were made, and that is the moment of time when the rights of the separate creditors attached to this fund: Black's Appeal 8 Wr. 509. These notes were actually signed a day or two after the assignment for the benefit of creditors was made. At the time of the assignment, the creditors became joint proprietors or acquired an equitable interest or

11 OUTERBRIDGE.—6.

ownership, became owners or part owners in and to the assigned property (Miller's Appeal, 11 Casey pp. 482 and 483), and it was beyond the power of Casper Bigler afterwards to create a new individual liability against the existing individual creditors, or in other words, owners of the assigned individual property; or to convert a partnership indebtedness, on simple contract, into an individual liability, to the prejudice of those who were individual creditors at the time of the assignment. Therefore the assignees of the City Bank cannot participate in the distribution of this fund.

Casper S. Bigler was a competent witness to prove these facts. Whether the fund were awarded to the City Bank or to Gilbert, his liability still continues for so much of his liabilities as remained unpaid. He had therefore no such direct, certain and pecuniary interest in the contention of these rival claimants, as would exclude him from the witness stand.

Mr. Justice CLARK delivered the opinion of the Court, October 6th, 1884.

An assignee for the benefit of creditors, as such, has, generally, no right of appeal from a decree distributing the fund in his hands, among creditors; the decree is a complete protection in paying out the money; the law requires him to collect the trust property, put it into distributable form, and apply it as he may be directed, and his full duty is discharged in so doing. If the law were otherwise creditors might be subjected to great delay and useless expense to serve the interests of the assignees: Singmaster's Appeal, 86 Penn. St. 169; Herbst's Appeal, 90 Id. 353.

But the assignment of 7th of September, 1876, to Francis Jordan and George W. Porter, although evidenced by a single instrument in effect created in the assignees two distinct and several trusts. Samuel S. and John A. Bigler, were bankers, doing business in the name of the City Bank, and it is not pretended, that Casper S. Bigler had any connection with or interest in the bank. Samuel S. and Casper Bigler were lumber manufacturers, and with that firm John A. Bigler had no connection whatever. The assets of these several firms were, therefore, properly the subject of distinct conveyances. If they had been so conveyed, we think, the assignees' right of appeal would not be doubted, and we cannot see how that right can be defeated by the mere form of the conveyance. Distinct accounts, and distinct distributions are necessary to the convenient and proper adjustment of the rights and equities involved; the estate of John A. Bigler cannot be confused with that of Bigler & Son, nor can the affairs of Casper S. Bigler be settled in an account of the City Bank. The

assignees therefore, first settled an account of the assigned estate of Bigler & Son embracing none of the assets of the City Bank; this account, somewhat modified, was confirmed, and the balance in the hands of the assignees, under that account is the fund for distribution. Having filed a satisfactory account as assignees of Bigler & Son, their only duty as to the creditors of that firm is to pay as they may be directed. But the City Bank, as the creditor of Bigler & Son, claim to participate in this distribution, and if the assignees of that bank have a proper claim, we cannot see why they may not share in the distribution as others, although the fund be in their own hands; if this be so, they are entitled to the remedies appropriate in such case.

But assuming that the appeal is rightly taken, we cannot sustain the contention of the appellants in this case. The fund for distribution is the proceeds of real estate, the individual assets of Casper S. Bigler, sold by the assignees under the provisions of the Act of 17th February, 1876. Two claimants, only, appear before the Auditor. Lyman D. Gilbert claims the amount of judgment No. 87 November Term, 1876, John A. Hocker v. Casper S. Bigler, an individual indebtedness, the lien of which expired September 7th, 1881. No scire facias had issued upon it, and, as the conversion of the land into money was not effected until 31st January, 1882, the date of the confirmation of the sale, the judgment was an individual debt without priority of lien: Carver's Appeal, 8 Norris 276; Tomlinson's Appeal, 9 Norris 224; Burkholder's Appeal, 13 Norris 525. The full amount of this judgment, debt and interest is $9227.61. From the proceeds of other real estate of Casper S. Bigler, embraced in the assignment, $5779.64 had been previously awarded to this claim but it is conceded that in this distribution, it is entitled to participate upon its full amount, provided only that satisfaction of the proper balance be effected thereby: Kim's Appeal, 3 Casey 42. The City Bank by their assignees, Francis Jordan and Geo. W. Porter claim upon five several judgment notes, dated January 1, 1876, under seal, payable to John A. Bigler, and signed Bigler & Son; having the words "City Bank, Harrisburg, Pa.," stamped in blue ink, diagonally across the bottom of the notes, immediately before the signature, and amounting in the aggregate, to $184,000. The claim of the City Bank rests exclusively upon the notes, no evidence whatever was offered on the part of the bank to show the consideration upon which they were given; they are payable to John A. Bigler, but whether the consideration passed from him or from the bank does not appear; indeed whether they were given upon any valid consideration rests in the presumption arising from the seal.

[Appeal of Jordan and Porter.]

Casper S. Bigler was called as a witness, in the interest of Lyman D. Gilbert; his testimony is not printed, but from the opinion of the court below, we learn that he testified, among other things, that he signed the firm name to these notes, without the authority or consent of his partner. It is contended, however, in behalf of the City Bank, that if the signing of the firm name of Bigler & Son, by Casper S. Bigler was not binding upon his partner, it was binding upon *him,* and that the debt thereby became his individual debt entitled to participate in the distribution as such. The Auditors have found that the notes were not given for an original individual indebtedness of Casper S. Bigler. An interesting question might here arise whether or not the notes being given in this form for a partnership debt of Bigler & Son, under circumstances that they do not bind his co-partner, they could be allowed, under the rules of equity in a distribution of Casper S. Bigler's estate to the prejudice of his individual creditors, were it not for the fact that Casper S. Bigler further testified: "These notes . . . . . signed by Bigler & Son were signed in blank, *after the date of the assignment* for benefit of creditors. I signed them after the date of the assignment of the City Bank, it may be one or two days after, they were blank notes with no writing on when I signed them, the signature to the blank notes is mine."

That Casper S. Bigler is a competent witness we think cannot be doubted. He is not in any sense a party to the proceeding; he made no claim before the Auditor; the question was one of distribution among his individual creditors only; his partner had no interest in the fund, was no party to the notes, and could neither be bound nor benefitted by them. If the notes were not entitled to share in the fund, because they were executed after the assignment, his individual liability continued. The issue involved is not as to his liability—that is conceded—but it is as to the right of one of his creditors to participate, to the exclusion of another; his interest is *in equilibrio;* if the fund is applied to one creditor, his responsibility to the other remains.

The assignment for creditors was dated 7th September, 1876, and their rights are fixed as of that date ; each creditor, by the conveyance, becomes the owner, in equity, of such proportionate part of the property assigned as the debt due him bears to the aggregate of debts ; it is as part-owners that creditors have standing in court when the distribution comes to be made : Miller's Appeal, 11 Casey 48; Brough's Estate, 21 P. F. S. 460 ; Dean's Appeal, 2 Out. 101. The notes were dated January 1st, 1876, but Casper S. Bigler testifies, and the court finds, that they were not given at the time of

[Knauss v. Brua.]

their date, that they were given some days after the assignment, and were ante-dated; whether this was done by mere mistake, or with a fraudulent design, it was competent by parol proof to establish the fact: Finney's Appeal, 9 P. F. S. 398. After the assignment of their estate the assignors had no power over it, excepting as to the surplus, if any. Notes thus executed, therefore, afford no evidence of ownership in the property assigned, and, without proof of a previously existing consideration or claim, cannot participate in the distribution. This point, it is true, was overlooked by the Auditors, and is first raised in the opinion of the court below, but this is certainly no reason why we may disregard it. It was the duty of the court below to determine the cause according to the law and the evidence, and if the facts were not fully found by the Auditors, it was the duty of the court either to recommit or to revise and correct the report.

In this finding, too, we think the court was clearly right. The testimony of Casper S. Bigler, on this point, is clear and uncontradicted, and as to the character of the debt is fully sustained by the form and expression of the obligations themselves. No attempt was made to contradict his statement that the notes were given after the assignment, or to prove their consideration. It seems incredible that a transaction, involving so large a sum, was not susceptible of some form of proof or explanation. The question sought to be raised by the alternate report already referred to, so ably discussed by counsel, is not raised upon this record, and cannot here be determined.

The appeal is dismissed at the costs of the appellants, and the decree confirming the second alternative distribution of the Auditors is affirmed, and it is ordered that the money be paid out accordingly.